COMMONWEALTH vs. HUBERT BONDS.

Hampden. March 5, 1997. - April 9, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, & MARSHALL, JJ.

*Statute,* Retroactive application. *Practice, Criminal,* Retroactivity of judicial
holding, New trial, Instructions to jury, Reasonable doubt. *Words,*
"Reasonable doubt," "Moral certainty."

Discussion of Massachusetts and United States Supreme Court cases
discussing the use of the phrase "moral certainty" in jury instructions
on proof beyond a reasonable doubt. [701-703]
This court concluded that jury instructions in a criminal case that equated
proof beyond a reasonable doubt with proof to a moral certainty and
described moral certainty as the level of certainty required in making
important personal decisions were so inadequate as to be unconstitu-
tional. [700-701, 703]

INDICTMENT found and returned in the Superior Court on
September 14, 1972.

A motion for a new trial, filed on September 14, 1995, was
heard by *John F. Moriarty,* J.

The Supreme Judicial Court granted an application for
direct appellate review.

*Marcia B. Julian,* Assistant District Attorney, for the Com-
monwealth.

*Stewart T. Graham, Jr.,* for the defendant.

FRIED, J. In 1973, the defendant, Hubert Bonds, was found
guilty of murder in the second degree, and sentenced to life in
prison. A claim of appeal was entered but in May, 1975, an
order of dismissal was docketed. In 1995, a single justice of
this court reinstated the defendant's appellate rights and
granted the defendant leave to file a motion for a new trial in
the Superior Court. The motion was granted by the same
judge who presided at trial. The motion claimed that the
instructions to the jury on reasonable doubt were constitution-
ally deficient. We granted the Commonwealth's application
for direct appellate review, and affirm.

I

We recite the pertinent facts as detailed in *Commonwealth v. Smith*, 381 Mass. 141, 142-143 (1980). On June 11, 1972, the defendant and two other men, Willie Smith and Willie Scott, went to the R & P Restaurant to buy liquor. While in the restaurant, an argument ensued between Smith and Esther Shaw, who owned the restaurant with her husband, Henry Shaw. Scott and the defendant soon entered the kitchen as well, and Esther Shaw told Henry to telephone the police. As Henry was leaving the kitchen, he handed a gun to his brother, Edward Shaw, who also worked in the restaurant.

There is some controversy about what occurred next. Esther Shaw testified that the defendant, Smith, and Scott were all holding guns at this point, and that the defendant fired the first shot and hit Edward Shaw, who fell to the floor. She then testified that Smith told the defendant, "Kill that son-of-a-bitch," and that the defendant walked over to the victim and shot him again. Esther then grabbed the victim's gun, fired it in the direction of the kitchen door, ran outside, and fired the gun until it was empty. The defendant, however, testified that Edward Shaw fired the first two shots, and that he ducked to avoid those shots. He testified that he returned fire in self-defense.

After the shooting, the defendant, Smith, and Scott drove to Wesson Memorial Hospital to have the defendant treated for a gun shot wound in the arm. A ballistics expert testified at the trial that the bullet removed from the defendant's arm was fired from his own gun.

The Commonwealth reports that, at a joint trial, the judge directed a verdict of not guilty as to Scott, but allowed the charges against the other two to go to the jury. The jury found both guilty of murder in the second degree. The defendant was sentenced to life in prison.

The defendant was released on parole in 1987, but was reincarcerated in 1989 after his parole was revoked. The defendant petitioned a single justice of this court for relief under G. L. c. 211, § 3, and the single justice reinstated the defendant's appellate rights, allowing him to file a motion for a new trial and granting him the right to appeal from the judge's ruling if that motion were denied. The defendant then filed a motion for a new trial in the Superior Court asserting

faulty instructions on the issues of reasonable doubt and malice, trial counsel's failure to request and the judge's failure to give an instruction on excessive force manslaughter, and trial counsel's failure to communicate a proposed plea bargain. The defendant waived the last argument at the hearing. The judge who had presided at the trial granted a new trial on the ground that the instructions on reasonable doubt were constitutionally deficient. The judge did not address the other grounds.

## II

The sole issue is whether the jury instruction on reasonable doubt was constitutionally deficient.[1] We agree with the trial judge that it was. We note at the outset that no appeal has ever been taken. Thus, the defendant, even though his trial took place nearly twenty-four years ago, is entitled to the benefit of all new law decided during those years. *Griffith* v. *Kentucky*, 479 U.S. 314, 320-328 (1987) (grants retroactive application of all new law to cases pending on direct appeal). *Commonwealth* v. *Beauchamp*, *ante* 682 (1997). The other ground for denying the defendant the benefit of new law, the doctrine of waiver, is also unavailable because the law regarding the use of moral certainty and examples from ever yday life was not sufficiently developed at the time of the defendant's trial. See *Commonwealth* v. *Limone*, 410 Mass. 364, 365 (1991). The benefit of this new law is of particular

---

[1]The defendant argues that this appeal by the Commonwealth is improperly before the court because the procedural prerequisites under the version of G. L. c. 278, § 33E, as amended through St. 1962, c. 453, in place in 1972 have not been met. Specifically, the defendant argues that the Commonwealth would have to apply to a single justice of this court and make a showing that the appeal "presents a new and substantial question which ought to be determined by the full court." It is unclear this provision applies at all because, by the terms of § 33E before it was amended, that provision was only triggered after an appellate decision or after this court remitted a motion to the Superior Court, neither of which occurred here. Second, we have denied retroactive application of the 1979 amendment which limited § 33E review to convictions of murder in the first degree because retroactive application might violate the values inherent in the ex post facto laws. See *Commonwealth* v. *Davis*, 380 Mass. 1, 13-17 (1980). We have not, however, enforced the preamendment requirements of seeking leave from a single justice. Third, the fact that this court granted an application for direct appellate review implies that the appeal does raise a substantial question which should be addressed by the full court.

importance in this case where it is clear that the instructions on reasonable doubt would have been upheld had the appeal taken place at an earlier date. *Commonwealth* v. *Smith,* 381 Mass. 141 (1980) (upholding these very instructions on codefendant's motion for a new trial). Although the length of time between the trial and the defendant's appeal is unusual, this is not a case where we might deny the defendant the benefit of any new law because the delay is his fault or because he intentionally delayed in order to obtain the benefit of any new law. See *Beauchamp, supra* at 685-686.

The instructions in this case[2] equated proof beyond a reasonable doubt with proof to a moral certainty, and described moral certainty as the level of certainty required in making decisions in "matters of the highest importance concerning his own affairs." *Commonwealth* v. *Smith, supra* at 143 n.1. No other definition of reasonable doubt was given. Thereafter followed a paragraph explaining that proof beyond a reasonable doubt did not mean absolute certainty, but rather the elimination of any doubt except that "without reason." *Id.* The judge then proceeded to explain the meaning of moral certainty through the use of "illustrations." *Id.* at 144 n.1. He compared moral certainty to the decision to marry, to buy a new house, or leave a long held job. *Id.*

The Commonwealth urges us to follow our decision in *Commonwealth* v. *Smith, supra,* where we upheld these very instructions. The Commonwealth points out that in our decisions since *Smith* regarding the adequacy of reasonable doubt instructions, we have consistently cited *Smith* favorably, even as late as 1991. See *Commonwealth* v. *Limone,* 410 Mass. 364, 367, 370 (1991). In *Smith,* we recognized that the charge contained several examples from everyday life, and that, in *Commonwealth* v. *Ferreira,* 373 Mass. 116, 130 (1977), we had concluded that all such examples "should be avoided." We stated in *Ferreira* that such examples tend to trivialize the degree of certainty required because, "The degree of certainty required to convict is unique to the criminal law. We do not think that people customarily make private decisions according to this standard nor may it even be possible to do so. Indeed, we suspect that were this standard mandatory in private affairs the result would be massive inertia. Individuals

---

[2]The entire instruction on reasonable doubt appears in our opinion in *Commonwealth* v. *Smith,* 381 Mass. 141, 143-144 n.1 (1980).

may often have the luxury of undoing private mistakes; a verdict of guilty is frequently irrevocable." *Id.* Despite the use of examples, we found no error in *Smith* because the "instructions . . . were based on traditional and acceptable language, and properly informed the jury of the burden of proof incumbent upon the Commonwealth. There was emphasis on moral certainty as a definition of the Commonwealth's burden, in language substantially similar to instructions which we have approved in the past." *Commonwealth* v. *Smith, supra* at 146, citing *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850). In the years since *Smith* was decided, that decision has been in some conflict with decisions of ours which have found similar instructions to be unconstitutional. In *Commonwealth* v. *Rembiszewski*, 391 Mass. 123, 134 (1984), we noted that the *Smith* decision gave considerable support to the Commonwealth's position that the instructions were constitutional, but we concluded that it was "clear in [*Rembiszewski*] that the jury were instructed to treat proof beyond a reasonable doubt, proof to a moral certainty, and proof to a degree of certainty that the jurors would want in making decisions about their futures as equivalent concepts. This was constitutional error . . . ." We agree with the decision in *Rembiszewski.* We find the same error in the instructions in this case.

Recent cases decided by the United States Supreme Court and this court calling into question the use of the phrase "moral certainty" further convince us that the instructions here were unconstitutional. *Victor* v. *Nebraska*, 511 U.S. 1 (1994). *Cage* v. *Louisiana*, 498 U.S. 39, 41 (1990) (per curiam), rev'd on other grounds, *Estelle* v. *McGuire*, 502 U.S. 62 (1991). *Commonwealth* v. *Gagliardi*, 418 Mass. 562, 571 (1994), cert. denied, 513 U.S. 1091 (1995). In *Victor*, the Court stated:

> "We do not think it reasonably likely that the jury understood the words moral certainty either as suggesting a standard of proof lower than due process requires or allowing conviction on factors other than the government's proof. At the same time, however, we do not condone the use of the phrase. As modern dictionary definitions of moral certainty attest, the common meaning of the phrase has changed since it was used in

the *Webster* instruction, and it may continue to do so to the point that it conflicts with the [*In re Winship*, 397 U.S. 358 (1970)] standard."

*Id.* at 16. In our cases after *Victor*, we have upheld jury charges that use the phrase "if it is linked with language that lends content to the phrase." *Commonwealth* v. *Pinckney*, 419 Mass. 341, 345 (1995). In this case, the instructions were linked only with examples from everyday life, which, as we noted above, tend to lessen the degree of certainty required to an unconstitutional level. See *Ferreira, supra* at 130. Although the court in *Smith, supra* at 146, cited *Webster*, and relied on the similarity of language, that instruction did not use the phrases of the *Webster* instructions which particularly emphasize the high degree of certainty. The *Webster* charge states that jurors should have an "abiding conviction" that the defendant is guilty and states that "it is not sufficient to establish a probability, though a strong one." *Webster, supra* at 320. See *Victor, supra* at 21 ("Instructing the jurors that they must have an abiding conviction of the defendant's guilt does much to alleviate any concerns that the phrase moral certainty might be misunderstood in the abstract"). In the absence of such clarifying language, we have concluded that such instructions are unconstitutional. *Pinckney, supra* at 345-347.[3]

We conclude that these instructions which equate proof beyond a reasonable doubt with moral certainty, and then give no content to the phrase "moral certainty" except to compare it with the certainty required to make important personal decisions cannot withstand constitutional scrutiny. The trial judge's order allowing the defendant's motion for a new trial is affirmed.

*So ordered.*

---

[3]We do note that the trial judge lacked the guidance of *Cage* v. *Louisiana*, 498 U.S. 39 (1990) (per curiam), rev'd on other grounds, *Estelle* v. *McGuire*, 502 U.S. 62 (1991) (first case questioning use of phrase moral certainty), and *Commonwealth* v. *Ferreira*, 373 Mass. 116 (1977) (questioning use of examples of decisions in everyday life). We examine instructions before these cases were decided with lesser scrutiny, see *Commonwealth* v. *Garcia*, 379 Mass. 422, 441 (1980) ("we will scrutinize more carefully jury instructions given after the date of *Ferreira*"), but we conclude that the combination of errors in this case was such that the conviction cannot withstand even this lesser scrutiny.