Glen J. BREESE, Petitioner,

v.

Michael T. MALONEY, Respondent,

No. CIV.A. 03–11416–DPW.

United States District Court,
D. Massachusetts.

July 6, 2004.

---

Donald K. Freyleue, Ipswich, MA, for Glen J. Breese, Petitioner.

Natalie S. Monroe, Attorney General's Office, Boston, MA, for Michael T. Maloney, Department of Correction, Legal Division, Milford, Respondent.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

This case presents the problem of calculating the limitations period for commencing a habeas corpus petition, when (1) the claim relies upon constitutional rights newly recognized by the Supreme Court following the petitioner's conviction, but (2) those rights have not yet been made retroactive to cases on collateral review.

Glen Breese's conviction for first degree murder was affirmed by the Supreme Judicial Court of Massachusetts almost a quarter century ago. *Commonwealth v. Breese*, 381 Mass. 13, 406 N.E.2d 1292 (1980). In this habeas corpus petition under 28 U.S.C. § 2254, Breese challenges the jury instruction on reasonable doubt that was given at his trial. I conclude that his challenge fails on procedural grounds because it is not brought within the appropriate one year limitation period under the Antiterrorism and Effective Death Penalty Act (AEDPA), codified at 28 U.S.C. § 2244(d)(1).

Two different limitation periods could arguably apply to Breese's challenge: either the standard limitation period under § 2244(d)(1)(A), or the extended period under § 2244(d)(1)(C) for claims involving newly decided and retroactively applicable Supreme Court decisions. In opposition to the respondent's motion to dismiss, however, Breese does not address either statutory provision. Rather, he stitches together language from Supreme Court cases holding that there is "no jury verdict" of guilt if the trial judge has failed to provide a proper instruction on reasonable doubt, *Sullivan v. Louisiana*, 508 U.S. 275, 280, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (emphasis added), and that "a judgment of conviction, not based upon a verdict of guilty by a jury, is void," *Callan v. Wilson*, 127 U.S. 540, 557, 8 S.Ct. 1301, 32 L.Ed. 223 (1888). He maintains that his conviction was "void ab initio" and contends:

> In the case of a void judgment, there is no judgment at all, let alone a final judgment.... A judgment must exist to be final, and no such judgment exists. No such judgment existed in 1980, and no such judgment existed when Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996. The one year limitations period has not only not expired, it has yet to begin.

Breese's rhetorical sleight of hand uses language concerning the substantive law of jury instructions to obscure the purposes of the procedural law of finality, which the AEDPA limitation period serves for habeas corpus proceedings in the federal court. I must, by contrast, analyze his claim carefully under each of the two potentially applicable limitation periods Congress has enacted to govern the procedure by which

his substantive claim may be presented in this court.

## I.   § 2244(d)(1)(A)

AEDPA's standard limitation period for habeas corpus petitions runs one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). This period has expired for Breese, although the chronology is much more complex than respondent has recognized.

Calculation starts with the proposition that, because Breese's conviction became final well before the 1996 habeas corpus amendments imposing a one year limitation period, he had, under a judicial grace period,[1] until April 24, 1997 to file a petition to challenge his conviction. And this he did: Breese's initial federal petition, *Breese v. Maloney*, No. 97–11727 (D.Mass.), was indeed timely, if just barely.[2] However, I dismissed that petition without prejudice by Memorandum and Order dated January 8, 1998 because it contained unexhausted claims.

The present petition was filed on July 16, 2003. Some of the intervening time—according to the most charitable reading of the record, the period February 26, 2001 to August 20, 2003[3]—is tolled for limitations purposes by the collateral review proceeding that Breese pursued in the state courts. 28 U.S.C. § 2244(d)(2). But even if the time during which his initial federal petition was pending could also toll the limitation period—which case law following my dismissal made clear it cannot, *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)— there would still be an unexplained gap of more than thirty-seven months between the dismissal of Breese's initial federal petition and his return to state court. That is well beyond the one year grace period following AEDPA's enactment that judicial

1. The First Circuit adopted a one year grace period to address the precise problem of post-AEDPA collateral attacks on old convictions, based on pre–1996 Supreme Court decisions. Prisoners whose convictions became final before AEDPA's enactment on April 24, 1996 were afforded a full year to file claims based on (*inter alia*) pre-AEDPA Supreme Court decisions. *See Lattimore v. Dubois*, 311 F.3d 46, 53 (1st Cir.2002), *cert. denied*, 538 U.S. 966, 123 S.Ct. 1759, 155 L.Ed.2d 521 (2003); *Gaskins v. Duval*, 183 F.3d 8, 9 (1st Cir.1999).

2. While an examination of the docket in No. 97–11727 indicates that Breese's initial petition was formally received for filing on May 2, 1997, it appears from the envelope forwarding the filing fee that it should be deemed filed no later than April 24, 1997 under the "prison mailbox rule." *See Morales–Rivera v. United States*, 184 F.3d 109 (1st Cir.1999) (per curiam).

3. The parties have not made a part of this record the filings and rulings regarding the state motion for new trial which Breese filed on February 26, 2001 following my January 8, 1998 dismissal of his initial federal petition for failure to exhaust state remedies. The respondent has not raised the question of exhaustion here; consequently, I assume that Breese met his obligation to exhaust the constitutional claims he now presses in the state proceeding pending between February 26, 2001 and August 20, 2003. The end date reflected in the state trial court docket presents an arguable anachronism because it is over a month after the filing date of the instant petition. This anomaly of timing may be the result of a delay in receipt of the Supreme Judicial Court's decision denying leave to appeal the trial court's July 31, 2001 denial of the new trial motion. The August 20, 2003 end date in the trial court docket reports "[n]otice of docket entry *received* from the Supreme Judicial Court" (emphasis added). In any event, I proceed on the assumption that the claim is now exhausted and that Breese is entitled to tolling for his pursuit of state collateral review through his new trial motion pending from February 26, 2001 through August 20, 2003.

construction of the AEDPA limitation period allows.

■ I have given consideration *sua sponte* to whether some form of equitable tolling of the § 2244(d)(1)(A) limitation period would be appropriate. Breese timely filed his initial petition together with a motion to stay; but I declined to stay and dismissed the case *without* prejudice. Later developments in the case law made that disposition effectively *with* prejudice. *See Duncan*, 533 U.S. 167, 121 S.Ct. 2120, 150 L.Ed.2d 251. Of course, at the time I dismissed Breese's petition I did not have the benefit of that case law, and under analogous circumstances today, I would be inclined to stay the petition. *See Neverson v. Farquharson*, 366 F.3d 32, 42–43 (1st Cir.2004). But that circumstance is not enough to permit equitable tolling.

Had Breese promptly returned to state court after my initial dismissal, there might be equitable grounds to toll the limitation period. However, his thirty-seven month delay has more than exhausted the First Circuit's sense of equity's patience. *See Neverson*, 366 F.3d at 42–44 (equitable tolling inappropriate, even though petitioner was "unfairly misled by a sea change in habeas law in the last decade," because he "inexplicably waited nearly seven months after [district court's] dismissal of his initial habeas petition ... before he requested a new trial in state court").

## II.  § 2244(d)(1)(C)

AEDPA also provides an extended limitation period following certain developments in the law as a result of Supreme Court decisions. Under this provision, a claim may be brought within one year from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C). However, even assuming that the cases that Breese relies upon fall within the scope of this provision and are ultimately held retroactive for purposes of collateral attack, the extended limitation period cannot help him now.

Breese's claims appear to be grounded upon decisions from the 1990s that reflect evolving changes in the substantive law of reasonable doubt instructions. *See Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); *Sullivan*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182; *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), *overruled on other grounds, Estelle v. McGuire*, 502 U.S. 62, 73 n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Without expressing a view on the merits of Breese's claim, I observe that, without question, there has been a change in view during the past quarter century regarding the substantive propriety of the type of reasonable doubt jury instruction that Breese challenges. That change of substantive view has only served to emphasize the differences in potential outcomes as a result of the procedures affecting finality. Those who raised such issues on direct review at the latter part of the time period have benefited from substantive changes; those who raised the issues at the earlier part of the period did not benefit from the evolving view. *Compare Commonwealth v. Bonds*, 424 Mass. 698, 677 N.E.2d 1131 (1997) (reasonable doubt instruction found defective) *with Commonwealth v. Smith*, 381 Mass. 141, 407 N.E.2d 1291 (1980) (same reasonable doubt instruction in same trial as at issue in *Bonds* upheld); *see also Smith v. Butler*, 696 F.Supp. 748 (D.Mass.1988) (federal habeas corpus petition denied), *aff'd*, 879 F.2d 853 (1st Cir.),

*cert. denied,* 493 U.S. 895, 110 S.Ct. 245, 107 L.Ed.2d 196 (1989).

■ I am satisfied that, for purposes of a first (as opposed to a second or successive) petition, a district court has the authority to decide whether a Supreme Court case should apply retroactively on collateral review. Even though this is Breese's chronologically second petition, it will be deemed a first rather than a "second or successive" petition under § 2244(b)(2) because his initial petition was dismissed on exhaustion grounds. *See Stewart v. Martinez–Villareal,* 523 U.S. 637, 643–45, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998). On its face that distinction might be important here because, while the statute requires the Supreme Court itself to make a decision retroactively applicable for second or successive petitions, it imposes no such requirement for initial petitions. *Compare* 28 U.S.C. § 2244(d)(1)(C) (defining limitation period for claims involving a "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review") *with id.* § 2244(b)(2)(A) (requiring dismissal of new claims in second or successive petitions unless claim "relies on new rule of constitutional law, made retroactive to cases on collateral review *by the Supreme Court* ") (emphasis added).

The distinction means that the inferior federal courts, including district courts, may decide, in a timely filed first petition, whether a newly recognized constitutional right applies retroactively. As Judge Easterbrook has held for the Seventh Circuit in a case that I find persuasive, the lower court is essentially exercising jurisdiction to decide its own jurisdiction in this context by determining retroactivity. *Ashley v. United States,* 266 F.3d 671, 673 (7th Cir.2001). The case law seems generally to recognize this approach.[4] *United States v. Lopez,* 248 F.3d 427, 432 (5th Cir.2001), *cert. denied,* 534 U.S. 898, 122 S.Ct. 222, 151 L.Ed.2d 158 (2001); *United States v. Sanders,* 247 F.3d 139, 146 n. 4 (4th Cir.2001), *cert. denied,* 534 U.S. 1032, 122 S.Ct. 573, 151 L.Ed.2d 445 (2001); *Gaines v. Matesanz,* 272 F.Supp.2d 121, 130 (D.Mass.2003) (Report and Recommendation of Dein, M.J. adopted by Stearns, J.); *Murray v. United States,* No. 01–11271, 2002 WL 982389, *2–4 (D.Mass. May 10, 2002) (Young, C.J.); *see also Sepulveda v. United States,* 330 F.3d 55 (1st Cir.2003) (not acknowledging this question, but proceeding to decide whether new rule of criminal procedure applied retroactively on collateral review).

But the challenge through a first petition must be brought within one year of the (potentially) retroactively applicable Supreme Court decision in order to take advantage of the extended limitation period. The plain language of § 2244(d)(1)(C) requires the limitation period to run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court." I recognize that some courts have held that the limitation period of § 2244(d)(1)(C) may begin to run again from the date that a lower court decides that the Supreme Court decision applies retroactively, even if the petition is filed more than a year after the date of the

---

**4.** Many of the pertinent cases, including *Ashley,* construe limitations periods under 28 U.S.C. § 2255 (applying to federal prisoners), rather than those under § 2244 (applying to state prisoners), but the relevant texts of the two provisions are materially identical. *See* 28 U.S.C. § 2255 ¶ 6(3) (one-year limitation period "shall run from . . . the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review").

underlying Supreme Court case. *See, e.g., Berthoff v. United States,* 140 F.Supp.2d 50, 59 (D.Mass.2001) (Young, C.J.), *aff'd on other grounds,* 308 F.3d 124 (1st Cir.2002). I do not find such a holding consistent with the language of § 2244(d)(1)(C). *See Lopez,* 248 F.3d at 433; *Triestman v. United States,* 124 F.3d 361, 371 & n. 13 (2d Cir.1997).

I find rather that Congress has recognized a three-tiered system of hospitality to consideration of claims based on Supreme Court decisions governing newly recognized constitutional rights. This hierarchy imposes increasing burdens upon those challenging their convictions.

■ At the most hospitable tier are cases for which the underlying judgments have not become final. Defendants whose convictions are on direct appeal may challenge their convictions under any Supreme Court decision issued right up until their direct appeals are exhausted. *See Griffith v. Kentucky,* 479 U.S. 314, 322–23, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).

■ At the next level are prisoners who have exhausted direct appeals, but whose first habeas corpus petitions have not reached final judgment. These prisoners have one year from the later of (1) the date their convictions become final, or (2) the date that the Supreme Court issues a potentially retroactively applicable decision, to raise in their first petitions the contention that the decision applies retroactively. 28 U.S.C. § 2244(d)(1)(C).

■ At the third tier, occupied by prisoners whose first federal habeas corpus petitions have reached final judgment, hospitality is contingent and deferred. They may not raise the issue until the Supreme Court *itself* decides that the watershed decision applies retroactively, and even then they must seek leave for the prosecution of such a second or successive petition within a year. 28 U.S.C. § 2244(b)(2).

■ Breese's petition before me falls into the second tier and the extended limitation period for retroactively applicable decisions cannot help him. Consequently he must now wait until the conditions necessary for him to maintain a second and successive petition in the third tier become applicable. Because the cases that he relies upon were all decided more than one year before the passage of AEDPA, and hence well before the completion of the judicial grace period, the filing of this—which I deem his first—petition did not occur within the period prescribed by § 2244(d)(1)(C). Breese now must wait until the Supreme Court itself determines, if ever it does, that the *Victor* and *Cage* line of cases regarding reasonable doubt instructions are retroactive to cases on collateral attack before a new limitation period under 28 U.S.C. § 2244(b) begins to run for him.[5]

I find this petition to be time barred and accordingly I ALLOW the respondent's motion to dismiss.

---

5. As a result, the instant case does not properly present the difficult question whether Supreme Court developments regarding reasonable doubt instructions, recognized after Breese's conviction, are retroactive to cases on collateral review. *See generally Tyler v. Cain,* 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001).