John R. McCOWN, Petitioner, Appellant,
v.

William CALLAHAN, et al.,
Respondents, Appellees.

No. 83–1376.

United States Court of Appeals,
First Circuit.

Argued Nov. 8, 1983.

Decided Jan. 27, 1984.

Jeffrey M. Graeber, Boston, Mass., by appointment of the Court, with whom Green & Friedman was on brief, for petitioner, appellant.

Linda G. Katz, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley, Asst. Atty. Gen., Chief, Crim. Bureau, and Barbara A.H. Smith, Asst. Atty. Gen., Chief, Crim. Appellate Div., Boston, Mass., were on brief, for respondents, appellees.

Before COFFIN, Circuit Judge, RO-SENN,* Senior Circuit Judge, and BREY-ER, Circuit Judge.

* Of the Third Circuit, sitting by designation.

BREYER, Circuit Judge.

Petitioner, John McCown, and his mother, Mamie Ann Best, were convicted of the murder in Massachusetts of Fayne Adams, Best's husband and McCown's stepfather. The prosecution claimed that Best and McCown committed the murder to obtain insurance proceeds. Key evidence against McCown consisted of his own statements—some of which he made when questioned by a Massachusetts policeman in South Carolina some months after the murder and others of which he denied making at all. These latter were put in evidence by McCown's former homosexual lover, Samuel Joe Cole. Defense counsel attacked Cole's veracity, implying that he was trying to put McCown in jail for his own personal reasons.

The Commonwealth's Supreme Judicial Court affirmed the jury convictions. *Commonwealth v. Best,* 381 Mass. 472, 411 N.E.2d 442 (1980). McCown brought a habeas corpus petition in the United States District Court for the District of Massachusetts. The district court denied the petition; McCown appeals. We have considered the basically technical legal issues that this appeal raises, and we affirm the district court's dismissal of the petition.

I

Petitioner first notes that when the trial judge charged the jury, he said:

It is terribly important that no innocent person be convicted, and it is equally important that a guilty person should be convicted. If there is a breach, ladies and gentlemen, of either one of those propositions, then we cheapen human life.

This statement, in petitioner's view, violated his federal constitutional right to have his guilt proved beyond a reasonable doubt. The Commonwealth responds that petitioner did not object to this charge promptly at trial, as required by Massachusetts procedural law. *Commonwealth v. Fluker,* 377 Mass. 123, 131, 385 N.E.2d 256, 261 (1979). In its view this "adequate" state procedural

"ground" bars petitioner from raising the issue on federal habeas review of his conviction. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The federal district court held that *Wainwright* did not bar substantive review because the Massachusetts Supreme Judicial Court had waived the procedural ground and decided the merits of the federal claim. The district court went on to conclude that the charge was constitutionally adequate; the trial judge, after making the challenged statement, properly charged the jury about the standard of proof for a guilty verdict; taken as a whole the charge ensured "that the jury would use the proper standard of proof beyond a reasonable doubt."

*Wainwright* holds that a defendant's failure to object to a claimed judicial error (even one of constitutional dimensions) at a state trial constitutes an adequate and independent state ground sufficient to uphold a conviction against the claim of "federal error" if at least 1) the state in fact has a "contemporaneous objection" rule; 2) the state enforces and does not waive the rule; and 3) the defendant fails to show both "cause" for and "prejudice" from, not having complied with the rule. Where these conditions are present, federal habeas courts typically will not reach the merits of the federal constitutional claim. *See Wainwright v. Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506; *cf. Francis v. Henderson,* 425 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976) (discussing "cause" and "prejudice").

Massachusetts has a "contemporaneous objection" rule. *Commonwealth v. Fluker,* 377 Mass. at 131, 385 N.E.2d at 261. Petitioner shows no "cause" excusing his lack of objection. Thus, the *Wainwright* issue here is whether Massachusetts "waived" its procedural rule. After all, as the Supreme Court has pointed out, the purpose of the "adequate state ground" exception to habeas review is "to accord appropriate respect to the sovereignty of the States in our own federal system . . . . [If the state courts do not] indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the state by entertaining the claim."

*Ulster County Court v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979).

Petitioner seeks to find "waiver" in the fact that the Commonwealth courts considered the substantive merits of his claim. The Supreme Judicial Court indeed discussed the merits of petitioner's claim, but it did so while applying a special standard of review for capital cases (contained in Mass.Gen.Laws Ann. ch. 278, § 33E)—a standard that allows it to overlook the lack of contemporaneous objection provided that there is a substantial likelihood that a miscarriage of justice has occurred. *Commonwealth v. Tavares,* 385 Mass. 140, 148, 430 N.E.2d 1198, 1203–04 (1982); *see also Commonwealth v. Perry,* 385 Mass. 639, 647, 433 N.E.2d 446, 452 (1982) (quoting *Commonwealth v. Tavares,* 385 Mass. at 148, 340 N.E.2d at 1203–04); *Commonwealth v. Garcia,* 379 Mass. 422, 439–40, 399 N.E.2d 460, 471 (1980) (quoting *Commonwealth v. Roberts,* 378 Mass. 116, 123, 389 N.E.2d 989, 994 (1979)) ("showing of grave prejudice or substantial likelihood that a 'miscarriage of justice has occurred' "); *Commonwealth v. Roberts,* 378 Mass. at 123, 389 N.E.2d at 994 (same). We have held that review by the Supreme Judicial Court under a "miscarriage of justice" standard does not automatically waive the state's "contemporaneous objection" rule, for in conducting the review the state court typically applies state, not federal, law. *Gibson v. Butterworth,* 693 F.2d 16, 17 (1st Cir.1982); *Zeigler v. Callahan,* 659 F.2d 254, 271 n. 11 (1st Cir. 1981).

Underlying *Gibson*'s holding is a practical fact: the Supreme Judicial Court, in conducting "miscarriage of justice" review, may not conduct the detailed examination of federal law and federal cases often necessary to decide a specific question of federal law; indeed, it need not do so as long as it determines that a "miscarriage of justice" is unlikely. If federal habeas courts were too ready to find that state "miscarriage of justice" review constitutes "waiver" of the state's procedural rules, the

**4**

state either would have to convert what is often a speedy reviewing task into a full scale detailed examination of federal law or it would have to abandon "miscarriage of justice" review altogether. The latter alternative seems highly undesirable. The former conflicts with the theory of *Wainwright*. That is to say, a state's efforts to stop gross miscarriages of justice should not suddenly force it to grapple with complex federal issues that its procedural rules would otherwise lawfully bar. Thus, *Gibson* insists upon a fairly clear showing that the state waived its procedural objection. The *Gibson* court found no "waiver" despite the fact that the state and federal standards for resolving the substantive issue (challenges to instructions related to "reasonable doubt") were likely very similar, to the point where the Supreme Judicial Court had initially referred to a federal Supreme Court case in describing the standard. *See Gibson v. Commonwealth*, 377 Mass. 539, 542, 387 N.E.2d 123, 125 (1979).

Deciding whether or not we have "waiver" in the case before us is difficult because the case is borderline. On the one hand, petitioner finds support in a pre-*Gibson* case, *Lussier v. Gunter*, 552 F.2d 385 (1st Cir.), *cert. denied*, 434 U.S. 854, 98 S.Ct. 171, 54 L.Ed.2d 124 (1977), where this court found "waiver" when the Supreme Judicial Court, conducting a § 33E-type review, said in a footnote that the trial judge's

remark would raise serious questions as to the infringement of the defendant's Fifth Amendment right to remain silent, *see Griffin v. California*, 380 U.S. 609, 611 [85 S.Ct. 1229, 1231, 14 L.Ed.2d .106] (1965) . . . were it not for that portion of the judge's charge [that explained fully about defendant's right not to testify].

*Commonwealth v. Lussier*, 364 Mass. 414, 424 n. 3, 305 N.E.2d 499, 506 n. 3 (1973). Certain facts of this case point towards *Lussier*'s "waiver" conclusion. The Supreme Judicial Court here examined the two federal cases that petitioner cited to it. It also discussed the standard for resolving the "reasonable doubt" issue in language that could apply to either federal or state law.

■ On the other hand, the state court's references to federal rights and federal legal principles are less clear in this case than in *Lussier*. The Supreme Judicial Court's conclusion here clearly rests upon state cases that it cites. There is no indication that the court researched, examined in depth, or intended to rely upon, federal law in the area. We conclude that the circumstances here are too similar to those of *Gibson* for us to reach a different result. Applying *Gibson*, we believe the state courts did not "waive" the procedural defect. And, if *Gibson* applies, so does *Wainwright*, for petitioner has shown no "cause" for failing to object.

■ Regardless, even if we were to draw the "waiver" line differently, as the district court pointed out, petitioner could not prevail. The challenged portion of the instruction was part of the trial judge's initial remarks to the jury. Some twenty-seven pages later, the trial judge gave a full and accurate instruction on the question of proof beyond reasonable doubt. As the district court pointed out, "the challenged remarks were not tied to the judge's instructions on reasonable doubt and, in context, did not operate to undercut the reasonable doubt standard." Reviewing the charge as a whole, as federal law requires, *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973), we are convinced that the trial judge's comments did not impermissibly weaken the clear impression that the jury otherwise received from the judge, namely that the prosecution must prove guilt beyond reasonable doubt.

II

Petitioner claims that certain incriminating statements he made to a Massachusetts policeman were obtained in violation of his *Miranda* rights. The Commonwealth argues that *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), which held that federal courts are to accept state court determinations on Fourth Amendment matters if "the State has pro-

vided an opportunity for full and fair litigation of a Fourth Amendment claim," *id.* at 494, 96 S.Ct. at 3052, means that federal courts should also accept state *Miranda* determinations. Numerous federal courts, however, have rejected the extension of *Stone* to *Miranda* claims. *See White v. Finkbeiner,* 687 F.2d 885 (7th Cir.1982); *Hinman v. McCarthy,* 676 F.2d 343 (9th Cir.), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982); *Patterson v. Warden, San Luis Obispo,* 624 F.2d 69 (9th Cir.1980); *Harryman v. Estelle,* 616 F.2d 870 (5th Cir.) (en banc), *cert. denied,* 449 U.S. 860, 101 S.Ct. 161, 66 L.Ed.2d 76 (1980); *Wilson v. Henderson,* 584 F.2d 1185 (2d Cir.1978), *cert. denied,* 442 U.S. 945, 99 S.Ct. 2892, 61 L.Ed.2d 316 (1979); *see also* Halpern, *Federal Habeas Corpus and the* Mapp *Exclusionary Rule after Stone v. Powell,* 1982 Colum.L.Rev. 1, 38–41 (explaining factors weighing in favor of not extending *Stone* to *Miranda* claims). Moreover, although the Supreme Court has on occasion asked whether *Stone*'s rationale extends to *Miranda* claims, *e.g., Wainwright v. Sykes,* 433 U.S. at 87 n. 11, 97 S.Ct. at 2506 n. 11; *Brewer v. Williams,* 430 U.S. 387, 414, 97 S.Ct. 1232, 1247, 51 L.Ed.2d 424 (1977) (Powell, J., concurring); *id.* at 423–24, 97 S.Ct. at 1252–53 (Burger, C.J., dissenting), it has yet to decide the issue. Prudence suggests that this controversial question be left, if possible, to the Supreme Court to decide. *See White v. Finkbeiner,* 687 F.2d at 890. In any event, we must accept the finding of the district court that petitioner was not "in custody" when he was questioned and made the incriminating statements; thus, we agree that *Miranda* does not make the statements inadmissible.

■ The Constitution requires *Miranda* warnings only when the questioning is "initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *see also Oregon v. Mathiason,* 429 U.S. 492, 494–95, 97 S.Ct. 711, 713–14, 50 L.Ed.2d 714 (1977). The facts here indicate that McCown was not in custody nor was his freedom otherwise significantly restricted when he was questioned.

■ In July 1976, McCown was in South Carolina. John Burns, a Massachusetts state policeman, and John Healy, an insurance investigator, travelled to South Carolina in order to question him. When they arrived, they contacted two local deputy sheriffs who went to McCown's trailer to ask for him. Samuel Joe Cole told the deputies that McCown was out. A few minutes later, Burns and Healy saw McCown and Cole drive away. Burns and Healy chased them in their nonofficial car. McCown and Cole stopped. Burns and Healy then went up to the car and identified themselves so that (they say) McCown and Cole would realize they were officials and not civilians with some nefarious object underlying the chase. McCown and Cole said that they were going to the sheriff's office. Burns told them that McCown was *not* under arrest. They all headed to the sheriff's office and once there, McCown, Burns, Healy and a deputy sheriff went into the interview room where the questioning started. Burns told McCown that he was not required to answer any questions and that he was free to leave if and when he desired. McCown then gave the statements here challenged. He was not advised of his *Miranda* rights. Once the questioning was over, McCown and Cole left. McCown was arrested approximately two years later.

These facts are strikingly similar to those of *Oregon v. Mathiason, supra.* In *Mathiason,* the defendant voluntarily went to the police station where he was interviewed by a state police officer. He was told that he was not under arrest and that the police suspected he was involved in a burglary. The policeman also falsely told him that his fingerprints were found at the scene. The defendant confessed to having committed the burglary. He was then advised of his *Miranda* rights and allowed to leave the station undisturbed. The Supreme Court held that the interview was not custodial

and, therefore, no *Miranda* warnings were required.

Comparing the facts here with those in *Mathiason,* we do not see how one could say, as a matter of law, that McCown was in custody when he was questioned. In both cases, a district court could find that defendants had come to the station voluntarily; in both cases they were told that they were not under arrest and they left the station undisturbed. In fact, there was an aggravating circumstance present in *Mathiason*—the questioner made a false statement, which made "confession" more likely. Here, there is no such aggravating feature cutting against the voluntariness of the statements. Thus, we cannot set aside the district court finding that, when questioned, McCown was not in "custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. at 444, 86 S.Ct. at 1612. *Miranda* warnings were not required.

### III

■ Petitioner objects to the district court's determination that *Wainwright v. Sykes, supra,* precludes the presentation of his claim that a reference made during trial to a prior murder charge against him deprived him of a fair trial. The challenged comments arose during the cross-examination of Mr. Samuel Joe Cole, one of the government's key witnesses. He testified that after the interview in the sheriff's office in July of 1976, McCown admitted to him that he had murdered his stepfather. In the process of impeaching Cole's testimony, counsel for Mrs. Best elicited information regarding the previous charge. Counsel for McCown did not object. In every other instance in which reference to the prior charge was made and counsel for McCown objected, the court properly sustained the objection. On appeal, the Supreme Judicial Court enforced its contemporaneous objection rule stating that "[t]here is no palliation here for failure to object." *Commonwealth v. Best,* 381 Mass. at 491, 411 N.E.2d at 453. Hence, a strict application of *Wainwright* is called for; un-

less petitioner can show the existence of "cause" and "prejudice," he is barred from presenting his claim in a federal habeas corpus application. *Wainwright v. Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506.

Defendant cannot show cause for failure to object here. To the contrary, there is reason to believe that defendant's failure to object was not inadvertent. As part of an effort to discredit Cole, counsel apparently tried to give the impression that Cole would say or do almost anything in an effort to get McCown back to jail with him—including falsely accusing McCown of murdering his own wife only a few weeks after their marriage. Of course, this was a high risk strategy, for the jury, instead of believing Cole to be a person whom insane jealousy drove to murder and perjury, might have believed McCown to be a person capable of murder. There is no way to know precisely what the jury believed. But the trial record is such that we cannot say McCown was treated unfairly or improperly under the law, much less that his counsel had "cause" for not objecting. Since petitioner has failed to meet his burden of showing the existence of "cause" and "prejudice," we hold that the district court correctly refused to allow the presentation of this issue.

### IV

■ Finally, petitioner argues that he might have taken the stand to explain about his former trial had the court not improperly discouraged him from doing so. We have examined the court's comments to which he points. The court explained to petitioner that because he had been acquitted of the charge of murdering his wife, he could not claim Fifth Amendment privilege with respect to it. The court added that petitioner could be allowed to testify only as to what was relevant. These comments correctly state the law. And we find nothing improper in their having been made.

The judgment of the district court is

*Affirmed.*