USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2343

 WILLIAM H. SIMPSON,

 Petitioner, Appellee,

 v.

 JAMES MATESANZ,

 Respondent, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Nancy Gertner, U.S. District Judge]

 Before

 Boudin, Circuit Judge,
 Bownes, Senior Circuit Judge,
 and Lynch, Circuit Judge.
 
 
 
 
 Susanne G. Levsen, Assistant Attorney General, Criminal
Bureau, with whom Thomas F. Reilly, Attorney General, was on brief,
for appellant.
 Dana A. Curhan for appellee.

May 4, 1999

 
 

 LYNCH, Circuit Judge. William H. Simpson was convicted
in Massachusetts state court in 1974 of the murder of Thomas
Morris, who was stabbed to death by Simpson's associate while
Simpson beat Morris with a baseball bat and hammer. Simpson is
serving a life sentence without parole.
 At Simpson's trial, the trial judge instructed the jury,
in accord with long-standing tradition, that absence of reasonable
doubt meant the jurors must be sure to a "moral certainty." The
judge defined moral certainty as the same degree of certainty
jurors would want in making decisions of importance in their own
lives. The judge also said that if the jurors had any serious
unanswered questions about the defendant's guilt, they must acquit. 
Massachusetts courts had employed moral certainty instructions
since they were approved in a murder case of much notoriety more
than a century ago. See Commonwealth v. Webster, 59 Mass. (5
Cush.) 295, 320 (1850).
 As times change, the meaning ascribed to particular words
changes. In 1990, in Cage v. Louisiana, 498 U.S. 39 (1990) (per
curiam), overruled on other grounds by Estelle v. McGuire, 502 U.S.
62, 73 n.4 (1991), the Supreme Court found that instructions
equating reasonable doubt with "substantial doubt" or "grave
uncertainty," when coupled with a reference to moral certainty,
could have impermissibly lowered the government's burden of proof. 
See id. at 40-41. In 1994, in Victor v. Nebraska, 511 U.S. 1
(1994), the Supreme Court noted that in 1850 "moral certainty meant
a state of subjective certitude" but that more modern usage might
lead a jury to "understand the phrase to mean something less than
the very high level of probability required by the Constitution in
criminal cases." Id. at 12, 14. The court also held that the
moral certainty phrase, if standing alone, was improper, but if put
in adequate context with other instructions was not
constitutionally improper. See id. at 15-16. After these
decisions came a series of attacks on Cage/Victor jury instruction
errors in earlier state convictions by way of habeas corpus
petitions in the federal courts.
 Simpson brought exactly such an attack by petition for
habeas corpus in federal court in 1997, although he had not
challenged the instructions on those grounds at trial or raised
those arguments on direct appeal of his conviction. In 1988,
Simpson finally did raise challenges to the reasonable doubt jury
instructions on two new trial motions in the state court, which
were denied on waiver grounds. In 1990, the highest court of
Massachusetts, the Supreme Judicial Court ("SJC"), denied review of
his claims for post-conviction relief on the ground that his claims
were neither new nor substantial. See Commonwealth v. Simpson, No.
90-274 (SJC for Suffolk County, Oct. 15, 1990).
 The federal district court bypassed Simpson's procedural
default in not raising his challenges at trial or on appeal by
concluding that "procedural default . . . cannot be inferred" from
the SJC's denial and by finding that the state had created an
exception to its contemporaneous objection rule when reasonable
doubt instructions were involved. Simpson, 29 F. Supp. 2d at 15-
16. The district court thus reached the merits of the habeas
question. On the merits, the district court found that the
standards for issuance of habeas corpus had been met and granted
the petition.
 We reverse, holding that the state court's denial of
review based on Simpson's procedural waiver constitutes an
independent and adequate state ground and that Simpson has not
excused his default by showing cause and prejudice for his waiver
or by establishing his actual innocence. As such, a federal court
is precluded from reaching the merits of his claims and it was
error to grant the petition.
 I
 We take the facts largely from the SJC decision affirming
Simpson's conviction. See Commonwealth v. Simpson, 345 N.E.2d 899
(Mass. 1976). On the morning of March 17, 1974, Simpson and his
associate, Wardell Washington, broke into an apartment in
Worcester, Massachusetts. They robbed the occupant, Thomas Morris,
of approximately twenty-eight dollars, then left him beaten and
stabbed to death. Simpson and Washington returned to Washington's
apartment (which was located in the same building), changed their
clothes, and -- after concocting a story designed to divert
attention from themselves -- notified the police of the crime. Two
women who shared Washington's apartment with Washington and Simpson
testified about inculpatory conversations between Washington and
Simpson as they planned the robbery, and to the statements by these
two men after the robbery and murder had been committed.
 Later that day, Simpson voluntarily went to a local
police station and signed a written statement in which he
reiterated their story: he and Washington had found Morris's body
after becoming suspicious when they saw two men run from an alley
next to the apartment building. 
 Within a few hours Simpson had changed his story. In
addition, Simpson submitted to a "benzidine test." That test
showed the presence of blood on his hands. Simpson was then taken
into custody.
 Some hours later, Simpson gave the police a second
written statement. In that statement he confessed to his
participation in the crimes. His confession was given after he was
read his Miranda rights. The trial judge found, and the SJC
affirmed, that the confession was given voluntarily. On October
31, 1974, a Massachusetts jury convicted Simpson of first degree
murder, armed robbery, and breaking and entering.
 On March 21, 1975, Simpson filed the first of six motions
for a new trial. The motion was denied, and Simpson appealed both
his conviction and the denial of this motion. He did not challenge
the reasonable doubt jury instructions in either appeal. The SJC
heard the appeal of both rulings under the authority of Mass. Gen.
Laws ch. 278, 33A-33G, and affirmed them both on April 9, 1976. 
See Simpson, 345 N.E.2d at 905.
 Simpson launched his first assault on the reasonable
doubt instructions in his third new trial motion, filed on April
25, 1988. In that motion, Simpson challenged the "moral certainty"
language and the judge's comparison of reasonable doubt to the
certainty that attends important decisions in the jurors' lives.
 The motion was denied on waiver grounds, but Simpson did
not seek leave to appeal from the single "gatekeeper Justice" of
the SJC, pursuant to Mass. Gen. Laws ch. 278, 33E. However,
Simpson raised the same jury instruction objections in his fourth
motion for a new trial, filed on November 3, 1988. That motion,
too, was denied on waiver grounds; this time Simpson sought leave
to appeal. On October 15, 1990, a gatekeeper Justice denied
Simpson's motion for leave to appeal, stating that he was
"persuaded by the arguments in the Commonwealth's opposition
memorandum that the defendant ha[d] not demonstrated that any of
the issues which he . . . [sought] to raise [were] new or
substantial." Commonwealth v. Simpson, No. 90-274 (SJC for Suffolk
County, Oct. 15, 1990).
 In his fifth motion for a new trial, Simpson raised the
same objections, this time under an ineffective assistance of
counsel rubric, and was again rebuffed by the Massachusetts trial
court. He did not seek leave under 33E to appeal. Finally,
approximately a year and a half later, Simpson filed a sixth motion
for a new trial, dated June 28, 1994, in which he reiterated the
previous objections and also challenged the "serious unanswered
questions" language. A superior court judge denied the motion on
grounds that the issues should have been raised on direct appeal
and noted that the denials of his previous post-conviction attacks
on the instructions rested on waiver grounds. On October 30, 1997,
a gatekeeper Justice denied Simpson's 33E application for leave
to appeal.
 II
 In April 1997, Simpson filed a petition for a writ of
habeas corpus in the United States District Court for the District
of Massachusetts, pursuant to 28 U.S.C. 2254. After
acknowledging that "[a] petitioner's procedural default in state
court is a 'typical' example" of an independent and adequate state
law ground that could bar habeas review in a federal court, the
district court considered whether Simpson had, in fact,
procedurally defaulted by failing to challenge the reasonable doubt
instructions in his first appeal or by failing to persuade the
gatekeeper Justice that he had raised a new and substantial claim. 
Simpson v. Matesanz, 29 F. Supp. 2d 11, 14 (D. Mass. 1998). 
 Reasoning that "[f]ailure to appear meritorious to a
gatekeeper cannot plausibly be put on a par with failure to take
certain standard steps, such as preserving issues by raising them
on appeal," the court found that "failure to get past the
gatekeeper does not by itself block federal habeas review unless
the single Justice clearly bases his denial of leave to appeal on
a procedural bar." Id. at 15 (citing Little v. Murphy, No. CIV.A.
95-10889-RGS, 1998 WL 704415, at *2 (D. Mass. May 21, 1998)).
 The district court also rejected the argument that
Simpson's failure to raise the objection in his first appeal, in
contravention of the Commonwealth's contemporaneous objection rule,
constituted a procedural default. The court offered two reasons
for its conclusion. First, it found that in Commonwealth v.
Gagliardi, 638 N.E.2d 20 (Mass. 1994), the SJC had "explicitly
waived the contemporaneous objection rule as applied to
constitutionally deficient reasonable doubt instructions." 
Simpson, 29 F. Supp. 2d at 16. While noting that this Circuit has
stated that "review by the [SJC] under a 'miscarriage of justice'
standard does not automatically waive the state's 'contemporaneous
objection' rule, where the SJC has conducted its review only on
state . . . grounds," the district court found that Gagliardi "may
well have changed the landscape." Id. (quoting McCown v. Callahan,
726 F.2d 1, 3 (1st Cir. 1984), and citing Tart v. Massachusetts,
949 F.2d 490, 496 (1st Cir. 1991) (internal quotation marks
omitted)).
 Second, the district court found that Simpson could not
have raised the present objections on his first appeal in 1976,
finding that it was not until 1977 "that the SJC first criticized
the 'important decisions' language in jury instructions on
reasonable doubt." Id. (citing Commonwealth v. Ferreira, 364
N.E.2d 1264, 1272-73 (Mass. 1977)). The court also found that
"moral certainty" language only "became a source of reversible
error on the federal level" in 1990. Id. (citing Cage v.
Louisiana, 498 U.S. 39, 41 (1990)).
 Having overcome the procedural hurdles, the district
court then reached the merits of Simpson's petition and found the
challenged phrases constitutionally defective, both individually
and collectively. See id. at 18-21. The court held that these
phrases created "compounded confusion," and saw no redeeming
language in the judge's charge. See id. at 19. And after placing
this court's decision in Bumpus v. Gunter, 635 F.2d 907 (1st Cir.
1980), in "historic context," the district court determined that
time had wrought "new, more rigorous standards for jury
instructions," and that Simpson's instructions ought to be judged
under the current law, retroactively applied. Simpson, 29 F. Supp.
2d at 21 (citing Cage); see also id. at 16-17 (citing Rodriguez v.
Superintendent, Bay State Correctional Center, 139 F.3d 270, 273-74
(1st Cir. 1998), for the proposition that Cage "announced a new
rule of constitutional law").
 The district court ordered that the writ should issue,
and the Commonwealth appeals.
 III
 This habeas petition by a state court prisoner is
governed by the Anti-Terrorism and Effective Death Penalty Act of
1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), amendments to
28 U.S.C. 2254(d), which provide, in relevant part, that:
 An application for a writ of habeas corpus on behalf of
 a person in custody pursuant to the judgment of a State
 court shall not be granted with respect to any claim that
 was adjudicated on the merits in State court proceedings
 unless the adjudication of the claim --

 (1) resulted in a decision that was contrary to, or
 involved an unreasonable application of, clearly
 established Federal law, as determined by the Supreme
 Court of the United States . . . .

28 U.S.C. 2254(d); see also O'Brien v. Dubois, 145 F.3d 16, 20
(1st Cir. 1998). In reviewing a ruling on a petition for a writ of
habeas corpus, we examine the district court's legal conclusions de
novo. See Curtis v. Duval, 124 F.3d 1, 3-4 (1st Cir. 1997).
A. "Adjudicated on the merits"
 Habeas review is not available in federal court unless,
to use the statutory term, it is review of a "claim that was
adjudicated on the merits in State court proceedings." 28 U.S.C.
 2254(d). This language is in part a reference to the long-
standing rule that federal courts do not review state court
decisions which rest on "independent and adequate state ground[s]." 
Trest v. Cain, 118 S. Ct. 478, 480 (1997); see also Torres v.
Dubois, No. 98-1924, 1999 WL 222970, at *2 (1st Cir. Apr. 20,
1999). Such independent and adequate state grounds exist where
"the state court declined to hear [the federal claims] because the
prisoner failed to meet a state procedural requirement." Brewer v.
Marshall, 119 F.3d 993, 999 (1st Cir. 1997), cert. denied, 118 S.
Ct. 1172 (1998). In such a case, "[c]onsiderations of comity and
federalism bar the federal court's review." Id.
 Wainwright v. Sykes, 433 U.S. 72 (1977), held that a
defendant's failure to object to a claimed judicial error
(including one of constitutional dimension) at a state trial
constitutes an independent and adequate state ground to uphold the
conviction if the state has a contemporaneous objection rule and
consistently enforces that rule. See id. at 85-87. Massachusetts
has such a contemporaneous objection rule. See Torres, 1999 WL
222970, at *2; Brewer, 119 F.3d at 1001 (citing Commonwealth v.
Fluker, 385 N.E.2d 256, 261 (Mass. 1979)). Simpson did not raise
on direct appeal any issue as to the jury instructions.
1. Independent and Adequate State Grounds
 Because Simpson was convicted of murder in the first
degree, his state appeals from the denial of state court collateral
attacks on his conviction after his direct appeal were governed by
Massachusetts General Laws ch. 278, 33E. That state "gatekeeper"
provision stops further review of the prisoner's claim by the SJC,
unless a gatekeeper Justice of the SJC finds that the prisoner's
claim is "new and substantial." Mass. Gen. Laws ch. 278, 33E. 
Where there has been procedural waiver below, the denial of review
under 33E is an independent and adequate state ground that bars
federal habeas review. Cf. Puleio v. Vose, 830 F.2d 1197, 1199-
1200 (1st Cir. 1987); McCown v. Callahan, 726 F.2d 1, 3 (1st Cir.
1984) (even grant of 33E review under miscarriage of justice
standard by SJC does not automatically waive the state's
contemporaneous objection rule).
 Here, Simpson's first petition under 33E was denied by
the SJC gatekeeper Justice on the ground that "the defendant ha[d]
not demonstrated that any of the issues which he . . . [sought] to
raise [were] new or substantial." Commonwealth v. Simpson, No. 90-
274 (SJC for Suffolk County, Oct. 15, 1990). The issues then
sought to be raised in the 33E petition included essentially the
same issues sought to be raised by the federal habeas petition. 
The facts here are that Simpson's new trial motions raising these
challenges were denied by the trial court on waiver grounds, the
SJC then denied 33E review, and the SJC did so finding the claims
were neither new nor substantial. To avoid the conclusion that
this denial of the 33E petition was an independent and adequate
state ground, Simpson advances two theories, one of which was
accepted by the district court. Neither is available to Simpson.
 The first theory relies on an opinion from the district
court of Massachusetts. That opinion holds that a denial of a 
33E petition by a gatekeeper Justice should not be considered an
independent and adequate state ground if the petition is simply
denied without explanation and a) the opinion below as to which 
33E review was sought addressed the merits of the claim, and b) the
Commonwealth did not argue procedural waiver to the SJC as a basis
for denial of the 33E review. See Little, 1998 WL 704415, at *2,
cited in Simpson, 29 F. Supp. 2d at 15. This holding is based on
the doctrine that the state decision must rest clearly on state
grounds and may not rely on mixed federal and state grounds. See
Coleman v. Thompson, 501 U.S. 722, 733-34 (1991); Brewer, 119 F.3d
at 999-1000.
 Whether or not Little is good law, the Little rationale
is simply inapplicable to Simpson's claims. The Little court did
not consider the 33E denial to be a bar because it found as a
matter of fact that the state trial court had reached the merits of
Little's claims, had held evidentiary hearings, and that the
Commonwealth had never argued procedural waiver on this 33E
petition. See Little, 1998 WL 704415, at *2. That is not this
case. Here the state trial court found procedural waiver, did not
reach the merits, and it was that decision on which 33E review
was sought and denied.
 It is also not our case because the gatekeeper Justice
here concluded that the claims were not "new" under Massachusetts
law, which defines "new" as follows:
 An issue is not "new" within the meaning of G.L. c. 278,
 33E, where either it has already been addressed, or
 where it could have been addressed had the defendant
 properly raised it at trial or on direct review. The
 statute requires that the defendant present all his
 claims of error at the earliest possible time, and
 failure to do so precludes relief on all grounds
 generally known and available at the time of trial or
 appeal.

Commonwealth v. Ambers, 493 N.E.2d 837, 839 (Mass. 1986) (internal
quotation marks omitted). Indeed, in Ambers the court found that
an objection to a reasonable doubt jury instruction was not "new"
because it could have been raised at trial or on appeal. See id.
at 840.
 Thus, the denial of the 33E gatekeeper petition here is
a finding by the SJC of procedural default on the part of the
petitioner and, as such, is the classic example of an independent
and adequate state ground. See Burks v. Dubois, 55 F.3d 712, 716
(1st Cir. 1995); see also Wainwright, 433 U.S. at 86-88; Ortiz v.
Dubois, 19 F.3d 708, 714 (1st Cir. 1994).
 The second theory, relied on by the district court, also
provides no escape from the conclusion that the state court
decision is an independent and adequate state ground. The district
court, relying on lower state court decisions, thought that the
decision of the Supreme Judicial Court in Commonwealth v.
Gagliardi, 638 N.E.2d 20 (Mass. 1994), created an exception for
reasonable doubt instructions to the Massachusetts contemporaneous
objection rule. See Simpson, 29 F. Supp. 2d at 16. From this the
district court concluded that the state had not consistently
applied its contemporaneous objection rule, at least where
reasonable doubt instruction claims are involved, and so the rule
cannot here be an adequate state ground. See id. When the state
ground rests on a state finding of procedural waiver, federal
courts will consider whether the state had consistently applied the
state rule to determine whether the state ground is adequate. Cf.
Brewer, 119 F.3d at 1001 ("State rules may not procedurally bar a
federal court from hearing a Batson claim on timeliness grounds if
the rule is not 'firmly established and regularly followed.'"
(quoting Ford v. Georgia, 498 U.S. 411, 423 (1991))).
 As the Supreme Court explained in Ford, "[i]n any given
case, . . . the sufficiency of such a rule to limit all review of
a constitutional claim itself depends upon the timely exercise of
the local power to set procedure. 'Novelty in procedural
requirements cannot be permitted to thwart review in this Court
applied for by those who, in justified reliance upon prior
decisions, seek vindication in state courts of their federal
constitutional rights.'" Ford, 498 U.S. at 423 (quoting NAACP v.
Alabama ex rel. Patterson, 357 U.S. 449, 457-58 (1958)). In NAACP
v. Alabama ex rel. Patterson, 357 U.S. 449 (1958), the Court
declined to apply a state procedural rule that "appeared in
retrospect to form a consistent pattern of procedures, because the
defendant . . . could not be deemed to have been apprised of its
existence." Ford, 498 U.S. at 423 (quoting Patterson, 357 U.S. at
457) (internal quotation marks omitted).
 In Gagliardi, the SJC decision on which the federal
district court's finding of inconsistency was based, the SJC
recites that it granted direct appeal from the trial court's denial
of defendant's motion for a new trial. See Gagliardi, 638 N.E.2d
at 21. Because the case did not involve a first degree murder
conviction, 33E did not, by its own terms, apply to the SJC's
decision whether to take review in Gagliardi. Gagliardi's motion
for a new trial, filed pursuant to Massachusetts Rule of Criminal
Procedure 30(b), had assailed various aspects of the jury
instructions. See id. at 22-23. The SJC noted that the waiver
rule described in Commonwealth v. Watson, 565 N.E.2d 408 (Mass.
1991), "prevents the defendant from raising issues in a motion for
new trial that he could have raised during a direct appeal." 
Gagliardi, 638 N.E.2d at 22 ("While a judge does have the
discretion to rehear such questions, [the SJC] has recommended
restricting the exercise of that power to those extraordinary cases
where, upon sober reflection, it appears that a miscarriage of
justice might otherwise result." (internal quotation marks
omitted)). Finding no possibility of a miscarriage of justice, the
trial court had considered all of Gagliardi's claims waived. 
See id. at 21. The SJC, however, chose not to apply the "Watson
waiver rule" to Gagliardi's challenges to the reasonable doubt
instructions in order to explore whether "a substantial miscarriage
of justice very likely would result" from those jury instructions. 
Id. at 23 (citing Victor v. Nebraska, 511 U.S. 1, 19-22 (1994), and
Sullivan v. Louisiana, 508 U.S. 275, 278 (1993)). After a
substantive review of the instructions, the court found that the
trial judge had appropriately described the constitutionally
required level of proof, and there was no miscarriage of justice. 
See id. at 24-25.
 We view Gagliardi as yet another example of the routine
application of SJC review under a "miscarriage of justice"
standard, a standard that is also applied in the 33E context. 
Gagliardi itself refers to the miscarriage of justice standard as
the reason for review. See id. at 23; see also Tart v.
Massachusetts, 949 F.2d 490, 496 (1st Cir. 1991) (in case not under
 33E, where no objection made to jury instructions and SJC reviews
only for miscarriage of justice in light of procedural waiver, the
SJC decision is an independent and adequate state ground). 
Gagliardi does not say that it creates an exception to the
contemporaneous objection rule or to the normal operation of state
law under 33E. If Gagliardi had intended to work such an
important change in state law, we would have expected it to say so. 
This is particularly true where the change would have opened the
door to federal habeas review of all Massachusetts challenges to
reasonable doubt instructions regardless of procedural waiver. We
are doubtful that the SJC, mindful of the federalism constraints on
federal lower court review of its decisions, would have reached
such a momentous result without any discussion.
 Further, the cases after Gagliardi in which the Supreme
Judicial Court did review reasonable doubt instructions not
objected to at trial and in which review was pursuant to 33E did
so by explicitly referring to one of the categories under 33E
where review is permitted. In Commonwealth v. Smith, 692 N.E.2d 65
(Mass. 1998), the court found that the defendants' claims were
"new" within the meaning of 33E. See id. at 68. In Commonwealth
v. Therrien, 703 N.E.2d 1175 (Mass. 1998), the gatekeeper Justice
"allowed the defendant's appeal on the jury instructions in light
of recent cases criticizing the use of 'moral certainty' language," 
and permitted the Commonwealth to argue the matter of whether the
claims about the reasonable doubt instructions were "new and
substantial" under 33E to the full court. See id. at 1177 & n.3. 
In neither Smith nor Therrien would any reference have been
necessary to 33E's "new and substantial" language if Gagliardi
had created a special exception for reasonable doubt instructions.
 This court has consistently held that such "miscarriage
of justice" review by the SJC where there has been procedural
waiver below does not mean that the state does not adhere to its
contemporaneous objection rule or that the procedural waiver is not
an independent and adequate state ground. See Puleio v. Vose, 830
F.2d 1197, 1200 (1st Cir. 1987); McCown v. Callahan, 726 F.2d 1
(1st Cir. 1984); Gibson v. Butterworth, 693 F.2d 16, 17 (1st Cir.
1982). The reasons for this approach were well articulated in
McCown:
 If federal habeas courts were too ready to find that
 state "miscarriage of justice" review constitutes
 "waiver" of the state's procedural rules, the state
 either would have to convert what is often a speedy
 reviewing task into a full scale detailed examination of
 federal law or it would have to abandon "miscarriage of
 justice" review altogether. The latter alternative seems
 highly undesirable. The former conflicts with the theory
 of Wainwright. That is to say, a state's efforts to stop
 gross miscarriages of justice should not suddenly force
 it to grapple with complex federal issues that its
 procedural rules would otherwise lawfully bar.

McCown, 726 F.2d at 3-4. Gagliardi does not change our view. The
district court's conclusion to the contrary was error.
2. Exceptions to Independent And Adequate State Grounds
 The matter does not end there. If Simpson can show 
"cause and prejudice" for his procedural default, a federal court
will reach the merits of his habeas case. See Bousley v. United
States, 118 S. Ct. 1604, 1611 (1998). Even if a petitioner does
not show "cause and prejudice," a federal habeas court will still
reach the merits if he can establish that any constitutional error
in the jury instructions "has probably resulted in the conviction
of one who is actually innocent." Murray v. Carrier, 477 U.S. 478,
496 (1986); see also Bousley, 118 S. Ct. at 1611. The district
court did not reach any of these issues in light of its ruling that
there was no independent and adequate state ground. The parties
have briefed the issues to us and neither party has requested a
remand on these points. We address the "actual innocence" test
first.
 a. "Actual innocence"
 Simpson argues first that the standard applied is one of
"fundamental miscarriage of justice," citing Murray, 477 U.S. at
495-496, and second that any constitutional error in the jury
instructions themselves leads to a substantial miscarriage of
justice, citing Gagliardi. Both arguments mistake the applicable
law. On the second point we note that the SJC's decision on what
is a miscarriage of justice is a determination made under state
law, see Gibson, 693 F.2d at 17, and does not answer the habeas
question under federal law of whether there is actual innocence.
 It is clear that for habeas purposes the federal
"fundamental miscarriage of justice" standard means that petitioner
must establish actual innocence. See Schlup v. Delo, 513 U.S. 298,
321 (1995); Burks v. Dubois, 55 F.3d 712, 717 (1st Cir. 1995). To
establish actual innocence, "petitioner must show that it is more
likely than not that no reasonable juror would have found
petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at
327, cited in Bousley, 118 S. Ct. at 1611; see also Brache v.
United States, 165 F.3d 99, 102 (1st Cir. 1999). This exception is
quite narrow and seldom used. See Burks, 55 F.3d at 717. 
 As the evidence described earlier makes clear, Simpson is
far from being able to claim actual innocence. He confessed to his
involvement in the murder, there was blood on his hands, and two
witnesses testified about his planning the robbery and his
conversations in the aftermath of the murder. We also note that
his co-defendant, Washington, pled guilty to the murder. 
See Simpson, 345 N.E.2d at 905 n.4.
 Nonetheless, if Simpson can show "cause" and "prejudice"
for his procedural waiver, there is federal habeas review of the
merits of his claim.
 b. "Cause"
 Simpson argues that he had "cause" for not objecting to
the jury instructions at the time of trial or at the time of his
first appeal because "there was no reasonable basis in existing
law." Reed v. Ross, 468 U.S. 1, 15 (1984). He relies on two
arguments.
 First, he says that the district court correctly
concluded that it was not until 1977 that the SJC criticized the
"important decisions" language in the reasonable doubt
instructions, see Commonwealth v. Ferreira, 364 N.E.2d 1264, 1272-
73 (Mass. 1977), and that it was not until 1990 that the "moral
uncertainty" language became a source of reversible error, see Cage
v. Louisiana, 498 U.S. 39, 41 (1990), overruled on other grounds
by Estelle v. McGuire, 502 U.S. 62, 73 n.4 (1991). Thus, he says,
his trial and appellate counsel did not have the arguments
reasonably available.
 Second, he argues that this court's decision in Rodriguez
v. Superintendent, Bay State Correctional Center, 139 F.3d 270 (1st
Cir. 1998), which was decided before Bousley, compels the
conclusion that the arguments were not reasonably available to him.
 The Supreme Court recently gave a more restricted reading
of "cause" for prisoner petitions than had been the view of this
Circuit. Compare Bousley, 118 S. Ct. at 1611 (decided May 18,
1998), with Rodriguez, 139 F.3d at 274 (decided March 23, 1998);
cf. Breest v. Cunningham, 784 F.2d 435, 437 (1st Cir. 1986). 
Bousley involved a first petition under 28 U.S.C. 2255, the
analogue for federal prisoners to 28 U.S.C. 2254, the statute for
state prisoners under which Simpson brought his petition. There is
no reason to think that the definition of "cause" will vary between
the two statutory provisions, and Bousley itself cites
interchangeably to cases brought by state and federal prisoners. 
See, e.g., Bousley, 118 S. Ct. at 1610 (citing Reed v. Farley, 512
U.S. 339, 354 (1994)); see also Reed, 512 U.S. at 353 ("[I]t is
scarcely doubted that, at least where mere statutory violations are
at issue, 2255 was intended to mirror 2254 in operative
effect."). Accordingly, we are required to apply the Bousley
definition of "cause."
 In Bousley, the petitioner had pled guilty in 1990 to
"use" of a firearm under 18 U.S.C. 924(c)(1) and sought through
his 2255 petition to take advantage of the narrow definition of
"use" contained in the Supreme Court's 1995 decision in Bailey v.
United States, 516 U.S. 137 (1995). In Bailey, the Supreme Court
adopted "a more stringent standard" for the government's showing of
"use" than had previously governed in the Circuit where Bousley had
pled guilty. See Bousley v. Brooks, 97 F.3d 284, 287 (8th Cir.
1996) (citing Bailey, 516 U.S. at 144), rev'd, 118 S. Ct. 1604
(1998).
 In the Supreme Court, Bousley argued that because neither
he nor his counsel could have foreseen the Bailey decision and
because any such argument would have been futile in light of the
law of the Circuit, he had shown cause. The Supreme Court rejected
both the unavailability/unawareness and the futility arguments. As
to the first argument, the Court held that there were cases
available at the time of petitioner's plea in which parties had
challenged the broader definition of the term "use." See Bousley,
118 S. Ct. at 1611. As to the futility argument, the Court
repeated that "futility cannot constitute cause if it means simply
that a claim was unacceptable to that particular court at that
particular time." Id. (quoting Engle v. Isaac, 456 U.S. 107, 130
n.35 (1982)) (internal quotation marks omitted).
 Bousley controls claims about jury instructions as well
as about guilty pleas. See Brache, 165 F.3d at 102. Bousley made
it clear that if an issue has been decided adversely to an argument
in the relevant jurisdiction, and the argument is not made for that
reason, that is insufficient reason to constitute cause for a
procedural default. See Bousley, 118 S. Ct. at 1611. In Brache,
this court noted that this conclusion may seem surprising to many
and that the unfortunate effect of this decision may be to
encourage litigants "to raise over and over issues seemingly
already settled in the circuit." Brache, 165 F.3d at 102-03. 
Brache also noted that Bousley must be read in context as a method
of limiting habeas review in response to the earlier expansion of
habeas and other protections for criminal defendants by the federal
courts in the 1960s. See id. at 103. We think Bousley's use of
"cause" is limited to the habeas and 2255 context, but in that
context it has real bite. Bousley's rule may seem harsh, and
reflects a further restriction on federal habeas, but it bears note
that a real claim of actual innocence trumps this restriction. See
Bousley, 118 S. Ct. at 1611. It also bears note that state
prisoners, at least in Massachusetts, are still left in a better
position than federal prisoners. That is because the state
prisoners can seek review in the state high court, an alternative
not open to federal prisoners, and the state standard for excuse
from waiver may well be more lenient than the federal cause
standard. See, e.g., Smith, 692 N.E.2d at 72.
 The question here concerns the implications of Bousley. 
Ours is a situation in which the state's highest court at the time
of trial and appeal had not squarely faced and rejected the sort of
claims now made by petitioner, which involve a "moral certainty"
instruction that was blessed in 1850 and widely used since, and in
which claims of the sort now made about the reasonable doubt
instructions had surfaced in some cases and commentary but were not
widely accepted. On one hand, Bousley cites to the familiar
standard of Reed v. Ross, 468 U.S. 1 (1984), that if a claim "is so
novel that its legal basis is not reasonably available to counsel,"
there is cause for procedural default. Id. at 16, cited in
Bousley, 118 S. Ct. at 1611. On the other hand, it seems an odd
result that a default is not excused where counsel failed to make
an objection because the law was squarely against him, but a
failure to make an objection may be excused where there was no
controlling precedent against the claim. The incentives to raise
claims are stronger when they have not been squarely rejected. The
logic of the futility analysis, it may be thought, spills over into
the "unavailability" analysis and that logic would make it harder
for a habeas petitioner to show that a claim was not reasonably
available. And yet, such a logic would mean that there would be
almost no situation in which a petitioner could show cause based on
the unavailability of an argument at the relevant time, a
conclusion we are reluctant to reach. Of course, the other methods
of showing cause under Murray -- that is, some objective factor
impeding counsel's efforts to comply with a state's procedural rule
or the unavailability of facts -- would still survive, but neither
of those assist Simpson. In the absence of better guidance, we
will assume arguendo that the familiar Reed unavailability standard
is still good law, subject to Bousley's caveat that an argument is
not unavailable simply because it has been rejected by a higher
court in a different case.
 The "cause" inquiry thus turns to the caselaw and
commentary on reasonable doubt instructions extant at the time of
Simpson's trial in 1975 and his first appeal in 1976. The focus is
not on when the Supreme Court first raised or resolved issues about
instructions of the type given here. And the focus must account
for the considerations of finality and comity that animated Bousley
and other interpretations of when an argument is reasonably
unavailable. See Engle v. Isaac, 456 U.S. 107, 134 (1982). We
also stress that this is an issue of federal law and that the
federal court must exercise its independent judgment. Cf. O'Brien,
145 F.3d at 24.
 Petitioner argues that we have already made that judgment
in the Rodriguez case, in which this court held that a moral
certainty claim was not available to a prisoner in 1984 and so
those claims were "previously unavailable" for purposes of the
limitation on successive habeas petitions in AEDPA. See Rodriguez,
139 F.3d at 274. Rodriguez concerned the statutory limitations on
second or successive habeas petitions and not whether there was
cause for procedural default to avoid independent and adequate
state grounds on a first habeas petition. See id. at 271-72. We
need not and do not decide whether the test for "previously
unavailable" for successive habeas petitions under AEDPA is the
same as the "unavailability" prong of the cause standard to
overcome a state prisoner's procedural default for purposes of a
first habeas petition under AEDPA. It suffices to say that
Rodriguez held that claims about moral certainty instructions were
previously unavailable because they would have been futile. See
id. at 274. In light of Bousley's clear mandate, issued after
Rodriguez, we are precluded from saying that the futility of the
reasonable doubt instruction challenges would constitute cause
excusing Simpson's procedural default. See Bousley, 118 S. Ct. at
1611.
 Rodriguez is, however, instructive for its holding that
the issue had been settled in favor of the constitutionality of
moral certainty instructions in the First Circuit by 1984, in a
series of decisions dating back to 1980 in both direct appeals and
on habeas. See Rodriguez, 139 F.3d at 274. This means the issue
had been raised before those dates.
 We turn to Simpson's other argument, that the
contemporaneous caselaw and commentary did not deal with the
challenges he now raises, and so those arguments were novel and not
reasonably available at trial or on appeal. Simpson bears the
burden of proof on this issue. See Murray, 477 U.S. at 497.
 Three portions of the reasonable doubt charge are
challenged in this habeas petition: the use of the term "moral
certainty," the analogy of the decision faced by the jurors to
"decisions of importance in [their] own lives," and the instruction
that Simpson must be given the benefit of the doubt if a juror had
"serious unanswered questions about [his] guilt." For the reasons
that follow, we find that these claims were not so novel as to be
unavailable to counsel at Simpson's trial and on appeal. Indeed,
Simpson's counsel did object at trial to the failure to give an
instruction as to the difference between the burden of proof in
criminal and in civil cases, but did not raise the claims now
asserted and chose not to press even this point on appeal.
 In 1970, the Supreme Court made it clear that the Due
Process Clause of the Fourteenth Amendment requires that the
government bear the burden of proving every element of a charged
crime. See In re Winship, 397 U.S. 358, 364 (1970). Winship has
since provided the basis for attacks on jury instructions that
lessen the government's burden of proof.
 In 1971, this court expressed concern about a jury
instruction that "a reasonable doubt can be defined as a strong and
abiding conviction that still remains after careful consideration
of all the evidence." United States v. Flannery, 451 F.2d 880,
882-83 (1st Cir. 1971). The court in Flannery warned that use of
language such as "strong and abiding conviction" was inappropriate
because the burden of proof was on the government. See id. at 883.
 The conclusion that challenges to Simpson's jury
instructions were not unavailable at the time of his trial and
appeal is buttressed by this court's 1972 decision in United States
v. MacDonald, 455 F.2d 1259 (1st Cir. 1972), which expressed
concern about defining reasonable doubt in terms of "proof to a
moral certainty, proof beyond a reasonable doubt for which you can
give a reason, and proof for which you can state an intelligent
reason." Id. at 1262-63 (internal quotation marks omitted). The
court cautioned against such variations as "flirting unnecessarily
with an impermissible lessening of the government's burden of
proof." Id. at 1263. Indeed, in United States v. Indorato, 628
F.2d 711 (1st Cir. 1980), we described MacDonald as a case in which
we indicated our uneasiness with moral certainty and reasonable
certainty instructions. See id. at 720.
 Earlier decisions of this court are fatal to Simpson's
unavailability claim. Based on Winship and Flannery, this court
twice concluded that a challenge to certain jury instructions was
available in 1973 and that the failure to raise those challenges at
trial could not constitute "cause" for procedural default in order
to overcome an independent and adequate state ground for habeas
purposes. See Breest v. Cunningham, 784 F.2d 435, 436 (1st Cir.
1986); Breest v. Perrin, 655 F.2d 1, 4 (1st Cir. 1981). The
instructions at issue referred to moral certainty, to decisions of
importance and seriousness in the jurors' own lives, and to strong
and abiding doubt. We think they are no different in kind than the
instructions at issue here. Our decisions in Cunningham and Perrin
require the rejection of Simpson's unavailability argument as a
basis for establishing cause.
 Even were we not bound, we would reach the same
conclusion by examining other relevant precedent in Massachusetts
and the First Circuit. In this court, challenges had been raised
to a "moral certainty" instruction in a reported decision on habeas
corpus in 1980. See Bumpus v. Gunter, 635 F.2d 907, 910-13 (1st
Cir. 1980). Bumpus involved an SJC affirmance on direct appeal in
1972. See Commonwealth v. Bumpus, 290 N.E.2d 167 (Mass. 1972),
vacated, 411 U.S. 945 (1973), aff'd on rehearing, 309 N.E.2d 491
(Mass. 1974). Counsel for Bumpus had raised, in state court on
direct appeal in the early 1970s, challenges to instructions that
used the "important questions" analogy. See id. at 175. The SJC
held in 1972 that the use of the example of serious decisions in
people's lives to illustrate the seriousness of the issue before
the jury could raise concerns, but was permissible in the case at
hand given the instructions as a whole. See id. The SJC also
noted that it had generally approved of "important questions"
instructions in response to a challenge in a 1971 decision. 
See id. (citing Commonwealth v. Libby, 266 N.E.2d 641, 644 (Mass.
1971)). Thus, challenges to instructions analogizing reasonable
doubt to serious questions in people's lives were being made in the
state courts by 1971.
 By 1974, counsel for Bumpus had brought a habeas petition
in the federal district court and, by amendment to his pleadings,
in 1976 had raised challenges to the "moral certainty" instructions
given at his trial. See Bumpus v. Gunter, 452 F. Supp. 1060, 1060-
62 (D. Mass. 1978). Thus, by 1976, a habeas petitioner in the
federal district court was raising challenges to an instruction on
"moral certainty," which was defined by reference to decisions of
importance (such as whether to have potentially fatal heart
surgery). See id. at 1062. The federal district court found the
Bumpus instructions to be constitutionally erroneous in a decision
issued in February 1978. See id. at 1063. In so doing, the
federal district court relied on this court's decision in 1978 in
another habeas case, Dunn v. Perrin, 570 F.2d 21 (1st Cir. 1978).
 Dunn also illustrates that challenges similar to the ones
petitioner now makes were being made at times before Simpson's
trial and appeal. In Dunn, this court held that a series of
questionable formulations defining reasonable doubt, while perhaps
not error standing alone, were error in combination. See Dunn, 570
F.2d at 23-25. The first formulation included a definition of
reasonable doubt: "doubt as for the existence of which a reasonable
person can give or suggest a good and sufficient reason." Id. at
23. The second formulation was one equating reasonable doubt to a
doubt that cannot "be readily or easily explained away, but rather
such a strong and abiding conviction as still remains after careful
consideration." Id. at 24. The third formulation referred to
moral certainty. See id. The court noted that there was a
difference among the authorities about the advisability of such
moral certainty instructions, citing to 1956 and 1976 opinions. 
See id. Dunn finally rejected a formulation defining reasonable
doubt as doubt which would cause one to act or "refrain from
acting" in connection with transactions of "importance and
seriousness." Id. at 23-24. In discussing these various
formulations, Dunn relied on MacDonald and Flannery and cited to
cases dating to 1965. See id.
 In sum, even applying the Reed standard for
unavailability, Simpson has not met his burden of showing that his
three challenges to his jury instructions were not reasonably
available to counsel at the time of trial or appeal.
 Because Simpson has not met this burden, he has not shown
"cause" for his procedural default. Because there is neither
"cause" nor "actual innocence," there is no exception to the rule
that the state court's determination of procedural default is an
independent and adequate state ground. For that reason, the
federal court sitting in habeas is precluded from hearing the
merits of Simpson's challenge. The district court was in error,
the issuance of the writ of habeas corpus is reversed, the writ is
vacated, and the petition is dismissed. So ordered.